**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

CAROL SCARLETT,

*Plaintiff*,

v.

OFFICE OF INSPECTOR GENERAL,

*Defendant*.

Civil Action No. 21-819 (RDM)

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Carol Scarlett brings this action against Defendant the Office of Inspector General (the "OIG") of the National Science Foundation (the "NSF"), alleging that Defendant has not complied with its obligations under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to disclose a complaint filed against her or her company, Axion Technologies, in or around April 2018. Dkt. 1. Before the Court are the parties' cross-motions for summary judgment, and an amended motion for summary judgment belatedly filed by Plaintiff. Dkt. 28; Dkt. 35; Dkt. 43. For the reasons set forth below, the Court will **GRANT** in part and **DENY** in part without prejudice Defendant's motion for summary judgment, Dkt. 28, and will **DENY** without prejudice Plaintiff's motion for summary judgment, Dkt. 35, and her amended motion for summary judgment, Dkt. 43.

## I.  BACKGROUND

Pursuant to Local Civil Rule 7(h)(1) and this Court's Standing Order, Dkt. 3, the OIG's motion includes a statement of material facts as to which the agency contends there is no genuine dispute. *See* Dkt. 28-2 (Statement of Undisputed Material Facts (or "SUMF")); *see also* Dkt. 3

1

at 4 (Standing Order) ("[E]ach motion for summary judgment . . . shall include a statement of facts with references to the administrative record.").  After Defendant filed its motion, the Court advised Plaintiff that "under Local Rule 7(h), your opposition must 'be accompanied by a separate concise statement of genuine issues' that responds to Defendant's 'statement of material facts as to which there is no genuine dispute.'"  Dkt. 29 at 2 (Fox/Neal Order); *see also* Dkt. 3 at 5 (Standing Order) ("The party opposing the motion must, in turn, submit a statement enumerating all material facts which the party contends are genuinely disputed and thus require trial.").  Plaintiff has not complied with that requirement; although she included a section labeled "[r]esponse to [f]acts" in her opposition to Defendant's motion, that section includes, principally, legal analysis, and, more importantly, it does not rebut Defendant's factual assertions.  Dkt. 32 at 4.  The Court will, accordingly, treat Defendant's statement of material facts as admitted for purposes of recounting the factual background of Plaintiff's FOIA request.  *See* Local Civ. R. 7(h)(1) ("In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."); *see also* Fed. R. Civ. P. 56(e) (indicating that a court can "consider [a] fact undisputed for purposes of the motion" where "a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact").

On June 25, 2020, Plaintiff submitted a FOIA request by email to the NSF's OIG, requesting "copies of the complaint(s) filed in or around April of 2018 against Axion Technologies LLC or . . . [Principal Investigator ("PI")] Dr. Carol Scarlett."  Dkt. 28-2 at 1 (SUMF ¶ 1); *see* Dkt. 28-4 at 11 (Def.'s Ex. 1) (June 25, 2020 Email).  (On Plaintiff's telling, she was seeking information about why she and her small business, Axion Technologies, LLC,

"were denied a SBIR Phase II grant" from the NSF in April 2018.  Dkt. 1 at 2–3 (Compl. ¶¶ 9–10, 12)).  The OIG FOIA office failed to respond to that original email, and Plaintiff followed up on August 10, 2020 with the same request, again in an email.  Dkt. 28-2 at 1 (SUMF ¶ 2); *see* Dkt. 28-4 at 10 (Def.'s Ex. 1) (Aug. 10, 2020 Email).  Defendant responded on August 11, 2020, requesting "clarif[ication]" on the meaning of "complaint" and explaining that "OIGs do not file civil or criminal complaints" and that, instead, the "NSF (the agency proper) files [suspension or debarment] actions."  Dkt. 28-4 at 9 (Def.'s Ex. 1).  "If the word 'complaint' refers to OIG Hotline complaints," the agency wrote, "then please specify as much."  *Id.*  The OIG further explained: "Once you have clarified your meaning, [the] OIG can either commence a search for responsive OIG records, or assist you in directing your focus to the appropriate entity."  *Id.*  But because "[Plaintiff's] request [was] not yet sufficiently clear," the agency concluded that the "statutory 'clock' for processing the request" had not yet begun.  *Id.*

After a series of emails between Plaintiff and the OIG—in which Plaintiff clarified that she was seeking "records related to information presented to the 'OIG Hotline' or that may have been presented to a specific investigator at [the] OIG," *id.* at 8—the agency concluded on August 14, 2020 that Plaintiff had perfected her request and that she was seeking "copies of records filed with the OIG during the period from April 1 to August 31st of 2018 against either Axion Technologies LLC or PI Dr. Carol Scarlett," *id.* at 2.  The OIG then identified one responsive record (totaling four pages in length), Dkt. 28-2 at 3 (SUMF ¶ 12), which apparently "relate[d] to an open OIG investigation" and which was "maintained in the Privacy Act system of records entitled . . . Office of Inspector General Investigative Files."  Dkt. 28-5 at 2 (Def.'s Ex. 2).  The record "consists of e-mail correspondence between [an] OIG complainant and the OIG Office of

Investigations, as well as an internal OIG exchange between Office of Investigations' employees." Dkt. 28-2 at 3 (SUMF ¶ 12).

After review, the agency concluded that the record was "totally exempt from the access provision of the Privacy Act . . . pursuant to 5 U.S.C. § 552a(j)(2), (k)(2)." Dkt. 28-5 at 2 (Def.'s Ex. 2). But the OIG also "processed [the record] under the FOIA to ensure the greatest possibility of access," *id.*; *see also* Dkt. 28-2 at 4 (SUMF ¶¶ 14–15), and, pursuant to the FOIA processing, disclosed one page of the document in part, with redactions, and withheld the remaining pages in full. Dkt. 28-5 at 2 (Def.'s Ex. 2). In support of these withholdings, the OIG invoked FOIA Exemptions 6, 7(A), and 7(C). *Id.* Plaintiff timely filed an administrative appeal, Dkt. 28-6 at 2 (Def.'s Ex. 3); Dkt. 28-2 at 2 (SUMF ¶ 5), and the Deputy General Counsel to the NSF OIG affirmed the OIG's decision on appeal, Dkt. 28-7 at 2–3 (Def.'s Ex. 4). The OIG subsequently reaffirmed its decision on reconsideration. Dkt. 28-10 at 2 (Def.'s Ex. 7).

Plaintiff filed this suit on March 23, 2021, alleging that the OIG "is unlawfully withholding records . . . requested by Plaintiff." Dkt. 1 at 5 (Compl. ¶ 26). The OIG, in turn, has moved for summary judgment, arguing that its withholdings and redactions are proper under both FOIA and the Privacy Act and that it conducted an adequate search of potentially responsive records. Dkt. 28. Plaintiff opposes that motion and has cross-moved for summary judgment. Dkt. 35. She has also filed a supplementary "amended" motion for summary judgment, Dkt. 43, and, more recently, has filed a motion "to add details"—specifically that, according to Plaintiff, the NSF's Office of Diversity and Inclusion tried to "suppress" her claim that she was denied an NSF grant in a discriminatory fashion, Dkt. 50 at 2.

## II.  LEGAL STANDARD

FOIA cases are typically resolved on motions for summary judgment under Federal Rule of Civil Procedure 56.  *Beltranena v. U.S. Dep't of State*, 821 F. Supp. 2d 167, 175 (D.D.C. 2011).  To prevail on a summary judgment motion, the moving party must demonstrate that there are no genuine issues of material fact and that she is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).  A fact is "material" if it is capable of affecting the outcome of a dispute, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute is "genuine" if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party, *Scott v. Harris*, 550 U.S. 372, 380 (2007).  For a FOIA case in particular, summary judgment may be granted on the basis of agency affidavits if they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  *Elec. Frontier Found. v. U.S. Dep't of Just.*, 739 F.3d 1, 7 (D.C. Cir. 2014) (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)).

Congress enacted FOIA "to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny."  *Bartko v. Dep't of Just.*, 898 F.3d 51, 61 (D.C. Cir. 2018) (internal quotation marks omitted).  The Act is premised on the notion that "an informed citizenry [is] vital to the functioning of a democratic society [and] needed to check against corruption and to hold the governors accountable to the governed."  *NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978).  Although FOIA "does not pursue transparency at all costs," it "protects the basic right of the public to be informed about what their government is up to," *Hall & Assocs. v. Env'l Prot. Agency*, 956 F.3d 621, 624 (D.C. Cir. 2020) (internal quotation

marks omitted), and embraces "a general philosophy of full agency disclosure," *U.S. Dep't of Def. v. Fed. Lab. Rels. Auth.*, 510 U.S. 487, 494 (1994) (internal quotation marks omitted).  In recognition that "legitimate governmental and private interests could be harmed by release of certain types of information," however, *AquAlliance v. U.S. Bureau of Reclamation*, 856 F.3d 101, 102 (D.C. Cir. 2017) (quoting *Dep't of Just. v. Julian*, 486 U.S. 1, 8 (1988)), Congress exempted nine categories of records from FOIA's disclosure requirements, *see* 5 U.S.C. § 552(b)(1)–(9).  In general, these exemptions are to be "narrowly construed."  *FBI v. Abramson*, 456 U.S. 615, 630 (1982).

When an agency withholds records based on a FOIA exemption, it bears the burden of justifying its withholding.  *See Fed. Open Mkt. Comm. of the Fed. Rsrv. Sys. v. Merrill*, 443 U.S. 340, 352 (1979); *Loving v. Dep't of Def.*, 550 F.3d 32, 37 (D.C. Cir. 2008).  That requires the government to submit either "relatively detailed and non-conclusory" affidavits or declarations explaining why a document was withheld, *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)), or an index that further elucidates, on a document-by-document basis, the rationale for the FOIA exemptions claimed (a "Vaughn index"), *see Vaughn v. Rosen*, 484 F.2d 820, 827–28 (D.C. Cir. 1973).  "The description and explanation the agency offers should reveal as much detail as possible as to the nature of the document, without actually disclosing information that deserves protection."  *Oglesby v. U.S. Dep't of the Army*, 79 F.3d 1172, 1176 (D.C. Cir. 1996).  In addition, "[t]o withhold a responsive record, an agency must show both that the record falls within a FOIA exemption," and, in most cases, "that the agency 'reasonably foresees that disclosure would harm an interest protected by [the] exemption.'"  *Machado Amadis v. U.S. Dep't of State*, 971 F.3d 364, 370 (D.C. Cir. 2020) (second alteration in original) (quoting 5

U.S.C. § 552(a)(8)(A)(i)(I)).  Finally, because "[t]he focus of . . . FOIA is information, not documents, . . . an agency cannot justify withholding an entire document simply by showing that it contains some exempt material."  *Mead Data Cent., Inc. v. U.S. Dep't of the Air Force*, 566 F.2d 242, 260 (D.C. Cir. 1977).  Rather, FOIA requires the agency to release "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt."  5 U.S.C. § 552(b).  "Before approving the application of a FOIA exemption, the district court must make specific findings of segregability regarding the documents to be withheld."  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1116 (D.C. Cir. 2007).

Finally, when someone requests documents under both FOIA and the Privacy Act, she is "entitled to the cumulative result of what both [statutes] provide."  *Kearns v. Fed. Aviation Admin.*, 312 F. Supp. 3d 97, 106 (D.D.C. 2018) (quoting *Martin v. Off. of Special Counsel, MSPB*, 819 F.2d 1181, 1184 (D.C. Cir. 1987)).  In other words, "the responding agency must demonstrate that the documents fall within some exemption under *each* Act."  *Id.* (emphasis in original) (quoting *Barouch v. U.S. Dep't of Just.*, 962 F. Supp. 2d 30, 66 (D.D.C. 2013)); *see also Martin*, 819 F.2d at 1184 ("If a FOIA exemption covers the documents, but a Privacy Act exemption does not, the documents must be released under the Privacy Act; if a Privacy Act exemption but not a FOIA exemption applies, the documents must be released under FOIA.").

The Court reviews an agency's decision to withhold records or portions thereof *de novo*. *See* 5 U.S.C. § 552(a)(4)(B).

## III.  ANALYSIS

The OIG maintains that it conducted a reasonable search for responsive records and that all of its redactions are supported by applicable FOIA and Privacy Act exemptions.  Dkt. 28. Plaintiff opposes the OIG's motion and cross-moves for summary judgment, arguing that the

OIG conducted an inadequate search and that all responsive records must be disclosed both under FOIA and the Privacy Act.  Dkt. 44.  The Court considers each issue in turn, beginning with the adequacy of the OIG's search for responsive records.

## A.    Adequacy of the Search

"An agency has an obligation under FOIA to conduct an adequate search for responsive records." *Ewell v. U.S. Dep't of Justice*, 153 F. Supp. 3d 294, 301 (D.D.C. 2016).  The adequacy of an agency's FOIA search "is judged by a standard of reasonableness," *Weisberg v. U.S. Dep't of Justice*, 745 F.2d 1476, 1485 (D.C. Cir. 1984), and "[a]n agency fulfills its obligations . . . if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents,'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)).  "In order to obtain summary judgment[,] the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).  The agency can show that it conducted an adequate search by relying on "[a] reasonably detailed affidavit [or declaration], setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched." *Id.*  Once the agency has proffered "relatively detailed and nonconclusory" declarations describing its search, the burden shifts to the FOIA requester to "produce countervailing evidence" sufficient to establish a genuine dispute of material fact as to the adequacy of the search.  *Morley v. CIA*, 508 F.3d 1108, 1116 (D.C. Cir. 2007) (internal quotation marks and citation omitted).  Such evidence might include "problems with . . . the specific search

terms used or the inadequacy of the particular locations searched." *Heartland All. for Hum. Needs & Hum. Rts. v. U.S. Immigr. & Customs Enf't*, 406 F. Supp. 3d 90, 117 (D.D.C. 2019).

The OIG's search for responsive records is described in the declaration of Jennifer Kendrick, an NSF OIG "Assistant Counsel" who "processed the Plaintiff's FOIA/Privacy Act request for OIG investigative records that is the subject of this litigation." Dkt. 28-3 at 1 (Kendrick Decl. ¶¶ 1–2). Kendrick describes the OIG's search in a single paragraph:

> In response to Plaintiff's FOIA/Privacy Act request, the OIG searched its investigative files for any complaints or allegations filed against Plaintiff or Axion Technologies from April 1 to August 31, 2018. The OIG's investigative files are maintained in the Privacy Act system of records entitled, NSF-52, "Office of Inspector General—Investigative Files." Records in this system that pertain to the OIG's enforcement of criminal laws or that are compiled for other law enforcement purposes are exempt from the access provisions of the Privacy Act pursuant to 5 U.S.C. § 552a(j)(2), (k)(2) in conjunction with 45 C.F.R. § 613.5.

*Id.* at 4 (Kendrick Decl. ¶ 16). Kendrick then explains that, "[a]s a result of the OIG's search of its investigative files, the OIG located one responsive record, totaling four pages" and that this record "consists of email correspondence between the OIG complainant and the OIG Office of Investigations (OI), as well as an internal email exchange between OIG OI employees." *Id.* (Kendrick Decl. ¶ 17). That is all that the Kendrick declaration—and the OIG more generally—says about the OIG's effort to search for responsive records.

The Court concludes that the Kendrick declaration fails to provide the type of "relatively detailed and nonconclusory" evidence necessary to establish the adequacy of the search. *Morley*, 508 F.3d at 1116 (internal quotation marks omitted). The declaration "does not 'explain in reasonable detail the scope and method of the search,'" and it runs afoul of the principle that "[s]imply naming databases and stating that they were 'searched'" does not suffice. *Flete-Garcia v. U.S. Marshals Serv.*, --- F. Supp. 3d ---, No. 18-cv-2442, 2020 WL 1695127, at *4

(D.D.C. Apr. 7, 2020) (first quoting *Abdeljabbar v. Bureau of Alcohol, Tobacco and Firearms*, 74 F. Supp. 3d 158, 168 (D.D.C. 2014); then quoting *People for the Am. Way Found. v. Nat'l Park Serv.*, 503 F. Supp. 2d 284, 294 (D.D.C. 2007)).  The declaration does not "identify the terms searched or explain how the search was conducted," and more importantly for present purposes, it does not show that searching the NSF-52 database alone was "reasonably calculated to uncover all relevant documents" or, conversely, "that no other record system was likely to produce responsive documents."  *Oglesby*, 920 F.2d at 68; *see also Steinberg v. U.S. Dep't of Just.*, 23 F.3d 548, 552 (D.C. Cir. 1994) (suggesting that agency declarations must "describe . . . what records were searched, by whom, and through what process"); *Weisberg v. Dep't of Just.*, 627 F.2d 36, 371 (D.C. Cir. 1980) (agency affidavits that "do not denote which files were searched or by whom, do not reflect any systematic approach to document location, and do not provide information specific enough to enable [the requester] to challenge the procedures utilized" are insufficient to support summary judgment).  The declaration does not explain, for example, whether all "records related to information presented to the 'OIG Hotline,'" Dkt. 28-4 at 8 (Def.'s Ex. 1)—which Plaintiff requested—are maintained in the "investigative files" found in the NSF-52 database, *see* Dkt. 28-3 at 4 (Kendrick Decl. ¶ 16).  This account of the search conducted, accordingly, "leaves substantial doubt as to [its] sufficiency."  *Truitt*, 897 F.2d at 542.

Kendrick justifies her decision "not [to] further address [the] OIG's records search" based on the fact that "Plaintiff ha[d] not challenged the adequacy of [the] OIG's search for records responsive to her FOIA/Privacy Act request."  Dkt. 28-3 at 4 (Kendrick Decl. ¶ 18).  But although Plaintiff's complaint focuses on more generalized concerns about the OIG's failure to "comply with the FOIA request," Dkt. 1 at 5 (Compl. ¶ 23), Plaintiff *does* object to the adequacy of the OIG's search in her summary judgment briefing, Dkt. 32 at 5–6, 11.  In assuming that

Plaintiff must challenge the adequacy of the search *before* moving for summary judgment, Kendrick puts the cart before the horse:  As the D.C. Circuit has explained, "[a] reasonably detailed affidavit, setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials . . . were searched[] is necessary to afford a FOIA requester *an opportunity* to challenge the adequacy of the search."  *Oglesby*, 920 F.2d at 68 (emphasis added).

In its opposition brief, the OIG contends that Plaintiff's motion for summary judgment fails to "adequately argue[] that the subject search was inadequate."  Dkt. 36 at 3.  On the OIG's telling, Plaintiff's motion is off point, raising concerns "about a search done in response to her [earlier] August 2018 FOIA request," which is not at issue in this litigation.  *Id.*  But although Plaintiff's motion does repeatedly refer to the August 2018 FOIA search, she does so in the interest of raising concerns about the 2020 FOIA search:  "If the original request was not properly researched," Plaintiff argues, "this has to raise considerable doubts about the *current* Defense's claims regarding 'no other responsive records.'"  Dkt. 32 at 6 (emphasis added); *see also id.* at 10 ("Given that a previous FOIA request failed to produce the redacted record showing the date and time of the complaint, a record which was responsive to the original (August 2018) request, there are needs for concerns that the second FOIA (June 2020) has fully reviewed all responsive records.").  Plaintiff also specifically argues that "emails questioning the Plaintiff's contracts or other use of funds" were not released in response to the "current request," *id.* at 6—a concern that the OIG does not address in its opposition, *see* Dkt. 36; *see also* Dkt. 35-4 at 1 ("At a minimum, the absence of emails following April 5th, 2018 from either of [two] individuals . . . raises questions about whether all responsive records were identified and properly released.").  The fact that Plaintiff's challenges are "vague," Dkt. 36 at 4, moreover,

does not relieve the agency of *its* initial burden on summary judgment to "show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68.

The Court will, accordingly, deny both the OIG's motion for summary judgment and Plaintiff's cross-motion for summary judgment regarding the adequacy of the search. The OIG may either renew its motion for summary judgment, supplementing the Kendrick declaration with additional information to better explain the search already performed, or it may conduct additional searches in response to Plaintiff's FOIA request. *See, e.g.*, *Flete-Garcia*, 2020 WL 1695127, at *5 (adopting this same approach).

**B.     Withholdings under FOIA**

The Court turns next to Plaintiff's argument that the OIG improperly withheld portions of the April 5, 2018 complaint that were responsive to her June 2020 FOIA request. *See* Dkt. 35; Dkt. 43. In its *Vaughn* index, the OIG describes the responsive records as one page of "[e]-mail correspondence between employees in the OIG Office of Investigations" and four pages containing "[e]-mail correspondence between [an] OIG complainant and OIG Office of Investigations." Dkt. 28-13 at 1 (*Vaughn* Index). The OIG invokes FOIA Exemption 7(A) to withhold the "[t]otal email correspondence," *id.* at 2, and Exemptions 6 and 7(C) to withhold the "[n]ames of and identifying information for" (1) the "OIG complainant" ("including information in the complaint that would identify the complainant"); (2) "third-party individuals referenced as part of the complaint;" and (3) "OIG law enforcement personnel," including those who "received the complaint and took initial administrative action," *id.* at 1. Plaintiff no longer objects to withholding "the names of individuals;" as she clarifies in her amended motion for summary judgment, she now seeks "only the content of the complaint." Dkt. 44 at 8–9. As to the body of

12

the "complaint," she disputes that "[m]ere accusations of wrong doing are . . . comp[iled] documents by law enforcement entitled to the privacy and protections under FOIA 6, 7(A) [and] (C)." *Id.* at 12.  Because Exemption 7(C) provides "broader" privacy protections than does Exemption 6, *see Roth v. U.S. Dep't of Just.*, 642 F.3d 1161, 1173 (D.C. Cir. 2011)—and because the OIG invokes Exemption 7(A) to withhold the "[t]otal email correspondence," Dkt. 28-13 at 2—the Court considers, in the first instance, whether Exemption 7 applies, before turning to Exemption 6.

      1.    *Exemption 7*

      "To fall within Exemption 7, documents must first meet a threshold requirement: that the records were 'compiled for law enforcement purposes.'"  *Pub. Empls. for Envt'l Resp. v. U.S. Section, Int'l Boundary & Water Comm'n*, 740 F.3d 195, 202–03 (D.C. Cir. 2014) ("*PEER*") (quoting 5 U.S.C. § 552(b)(7)).  In approaching that inquiry, "it is not the nature of the agency that controls, but the character of the records withheld." *Elkins v. FAA*, 99 F. Supp. 3d 90, 98 (D.D.C. 2015); *see also Tax Analysts v. IRS*, 294 F.3d 71, 77 (D.C. Cir. 2002) ("[T]he FOIA makes no distinction between agencies whose principal function is criminal law enforcement and agencies with both law enforcement and administrative functions.").  If an agency's "principal function is law enforcement," however, the agency's claim that the records at issue clear Exemption 7's threshold requirement is entitled to some deference, *PEER*, 740 F.3d at 203, in light of the "generally accurate assumption that federal agencies act within their legislated purposes," *Tax Analysts*, 294 F.3d at 77 (quoting *Pratt v. Webster*, 673 F.2d 408, 418 (D.C. Cir. 1982)).  But a "mixed-function agency"—*i.e.*, one whose primary function is not law

enforcement—is "subject to an exacting standard when it comes to the threshold requirement of Exemption 7." *Id.*

Although neither party addresses the question, the Court gleans from a review of the relevant regulations that the NSF's OIG is a mixed-function agency. The OIG is tasked with at least some law-enforcement functions: the Inspector General is responsible, for example, for "investigating allegations that a false claim or statement has been made" in violation of the Program Fraud Civil Remedies Act. 45 C.F.R. § 681.4. Such allegations, if proven, provide the NSF with an administrative remedy to impose civil penalties up to $5,000 "for each claim" or fraudulent "written statement." *Id.* § 681.3; *see also id.* § 681.1. But the OIG is also responsible for "oversee[ing] investigations of research misconduct," *id.* § 689.2(f), which may sometimes—but not invariably—rise to the level of a civil or criminal law violation. The regulations define "[r]esearch misconduct" as "fabrication, falsification, or plagiarism in proposing or performing research funded by NSF, reviewing research proposals submitted to NSF, or in reporting research results funded by NSF." *Id.* § 689.1(a). Engaging in research misconduct may result, among other things, in a "letter of reprimand," *id.* § 689.3(a)(1)(i), suspension of an "active award," *id.* § 689.3(a)(2)(i), or, possibly, "[d]ebar[ment] or suspen[sion] . . . from participation in Federal programs," *id.* § 689.3(a)(3)(iii). But only where "alleged research misconduct involves potential civil or criminal law violations[] . . . may [the OIG] refer the matter to the Department of Justice." *Id.* § 689.5(c). The OIG's responsibilities, accordingly, "embrace not only investigations of violations of law and breaches of professional standards that may result in civil liability," but also more routine investigations of research misconduct that may never result in civil or criminal referrals or proceedings. *See Jefferson v. Dep't of Just.*, 284 F.3d 172, 179 (D.C. Cir. 2002) (concluding that the Department of Justice's Office of Professional

14

responsibility is a "mixed function agency" because it investigates both possible law-violations and non-law violations).  Because the OIG has not established, at this stage, that it "specializes in law enforcement," *Bartko*, 898 F.3d at 64 (alteration omitted) (quoting *Campbell v. Dep't of Just.*, 164 F.3d 20, 32 (D.C. Cir. 1998)), then, "its attempt to shield its records under Exemption 7[] merits no deference," *id.*

At least on the present record, the OIG, accordingly, "bears the burden of showing on a case-by-case basis that any requested records were actually compiled for law-enforcement . . . purposes." *Id.* at 65.  To do so, the agency must establish that "[(1)] the investigatory activity that gave rise to the documents is 'related to the enforcement of federal laws[]' and [(2) that] there is a rational nexus between the investigation at issue and the agency's law enforcement duties." *Jefferson*, 284 F.3d at 177 (quoting *Pratt*, 673 F.2d at 420–21); *see also Clemente v. FBI*, 867 F.3d 111, 119 (D.C. Cir. 2017) (elucidating these two prongs).  The D.C. Circuit has elaborated on this distinction in the context of agency personnel investigations: there, the court has repeatedly distinguished between "investigations that focus directly on *specific alleged illegal acts* [that] could result in civil or criminal sanctions"—which serve a "law enforcement purpose," *Jefferson*, 284 F.3d at 177—and "[m]aterial compiled in the course of . . . internal agency monitoring," which does not serve a "law enforcement purpose" under Exemption 7, even if it "might reveal evidence that later could give rise to a law enforcement investigation," *id.* (alteration in original) (quoting *Kimberlin v. Dep't of Just.*, 139 F.3d 944, 947 (D.C. Cir. 1998));[1] *see also, e.g.*, *Rural Housing All. v. U.S. Dep't of Agric.*, 498 F.2d 73, 82 (D.C. Cir.

---

[1] As the D.C. Circuit explained in *Tax Analysts*, this distinction is inapplicable where the documents at issue "do[] not relate to any ongoing 'investigation.'" 294 F.3d at 78.  An agency can, for example, "avoid disclosure of internal agency material relating to guidelines, techniques, and procedures for law enforcement investigations and prosecutions," *id.*, even if they do not

1974) (noting that an "inquiry as to an identifiable possible violation of law . . . would have been 'for law enforcement purposes,'" while "customary surveillance of the performance of duties by government employees" would not be); *Bartko*, 898 F.3d at 65 (distinguishing between the investigation of alleged law violations and of alleged violations of "ethical [or] legal obligations," only the former of which constitute "law enforcement purposes" under Exemption 7).

On the record presently before this Court, the OIG has yet to carry its burden of "establish[ing] as a threshold matter" that the withheld email correspondence is a "law enforcement record[]." *Jefferson*, 284 F.3d at 178. The Kendrick declaration attests the following:

> The record withheld in response to Plaintiff's FOIA/Privacy Act request was compiled by the OIG Office of Investigations in response to allegations of wrongdoing by an alleged OIG complainant. This record includes information provided by the OIG complainant . . . and information recording [the] OIG's receipt of that complaint and its internal, initial administrative action on that complaint. The OIG opened an investigation, which is pending, based on this complaint. Thus, the information withheld under Exemptions 7(A) and 7(C) readily meets Exemption 7's threshold requirements because the information was compiled for law enforcement purposes and disclosure of that information could cause one or more of the particular harms enumerated under Exemption 7.

Dkt. 28-3 at 6 (Kendrick Decl. ¶ 26). Kendrick also attests that "the information protected pursuant to Exemption 7(A) relates to an ongoing law enforcement investigation being pursued

---

relate to a "specific alleged illegal act[] which could result in civil or criminal sanctions," *Jefferson*, 284 F.3d at 177; *see also, e.g.*, *Sack v. U.S. Dep't of Defense*, 823 F.3d 687, 694 (D.C. Cir. 2016) (concluding that "reports about polygraph use" fell within Exemption 7 because they "assist[ed] law enforcement agencies in taking 'proactive steps' to deter illegal activity and ensure national security"); *PEER*, 740 F.3d at 204 (determining that "emergency action plans" that "describe the security precautions that law enforcement personnel should implement around . . . dams during emergency conditions" were "plainly . . . created for law enforcement purposes"). But where, as here, the agency invokes Exemption 7 to shield investigatory records from disclosure, that investigation invariably must involve an inquiry into an "identifiable possible violation of law." *Rural Housing All.*, 498 F.2d at 82.

by the OIG." *Id.* at 7 (Kendrick Decl. ¶ 30); *see also* Dkt. 28-11 at 5 (Evans Decl. ¶ 18) (stating, without more, that this record concerned an "OIG law enforcement investigation[]").  "But . . . the [agency] cannot rely on [the] bare assertion" that the information was compiled for "law enforcement purposes" to "justify invocation of an exemption from disclosure," *Jefferson*, 284 F.3d at 178, especially when, as here, the relevant regulations contemplate that the OIG might, for example, engage in investigations of research misconduct that does not rise to the level of a federal-law violation.  If the investigation at issue here were related to allegations of research misconduct unadorned by any prospect that a federal law has been violated—as opposed to misconduct that might implicate violations of the Program Fraud Civil Remedies Act or any other civil or criminal laws—then it seems unlikely that the records would fall within Exemption 7.[2]  Even if such research-misconduct-related investigations might "conceivably result in civil or criminal sanctions," more than a remote prospect of such a development is required because, as

---

[2] The OIG invokes the D.C. Circuit's decision in *Center for National Policy Review on Race & Urban Issues v. Weinberger*, 502 F.2d 370 (D.C. Cir. 1974), for the proposition that "administrative" and "regulatory" investigations qualify as law enforcement "purposes" under Exemption 7, in addition to investigations of criminal and civil law-violations. Dkt. 28-1 at 17. But although the D.C. Circuit observed in *Weinberger* that "an *administrative* determination of ineligibility for governmental benefit . . . has the salient characteristics of 'law enforcement' contemplated by the wording of exemption 7," that case involved an alleged violation of federal law—specifically, 42 U.S.C. § 2000d, which forbids racial discrimination in an "activity or program that receives financial assistance from the Federal Government." *Weinberger*, 502 F.2d at 370, 371 (emphasis added). *Weinberger* does not, then, expand the category of "law enforcement purposes" beyond alleged federal-law violations to all proceedings that are "administrative" in nature just because some investigations of federal-law violations are "administrative" or "regulatory" in nature. *See Pratt*, 673 F.3d at 421 (emphasizing that an agency must "establish" under Exemption 7 "that its investigatory activities are realistically based on a legitimate concern that federal laws have been or may be violated").

with agency personnel investigations, "many [such investigations] would not [result in such sanctions], and would bear only on internal disciplinary matters." *Bartko*, 898 F.3d at 65.

The OIG has, at this juncture, offered the Court no basis to determine whether the investigatory records at issue here were compiled in response to an allegation of criminal or civil law violation. The declaration states, only, that the records were compiled "in response to allegations of *wrongdoing*." Dkt. 28-3 at 6 (Kendrick Decl. ¶ 26) (emphasis added); *see also* Dkt. 28-11 at 6 (Evans Decl. ¶ 22) (similarly referring to "wrongdoing"). Nor does the scope of Plaintiff's FOIA request—which sought "copies of the complaint(s) filed in or around April of 2018 against Axion Technologies LLC or . . . PI Dr. Carol Scarlett," Dkt. 28-2 at 1 (SUMF ¶ 1); *see* Dkt. 28-4 at 11 (Ex. 1)—mean that all responsive "complaint(s)" would necessarily involve allegations of civil or criminal wrongdoing. *Cf. Bartko*, 898 F.3d at 65 (noting, in concluding that the agency failed to establish a law-enforcement purpose, that the plaintiff's "FOIA request was broadly worded to include a wide variety of actual or alleged violations by [the relevant attorney] of the U.S. Attorney's Manual, the North Carolina Code of Professional Conduct, and other ethical and legal obligations").

On the present record, then, the Court cannot conclude that the OIG has carried it burden. To be sure, the records may well relate to a law enforcement purposes—and, indeed, much of the work of the OIG likely involves "law enforcement" for purposes of Exemption 7. But, based on the minimal evidence before the Court, it cannot exclude the possibility that this is one of the rare cases in which the investigation does not involve allegations of civil or criminal wrongdoing. Because a factual question, accordingly, remains as to whether the documents here were compiled for a "law enforcement purpose," the Court will deny both Defendant's and Plaintiff's motions for summary judgment. To the extent that the OIG can justify its

18

withholdings under Exemption 7, it may renew its motion with a more detailed evidentiary

showing, which, if necessary and appropriate, may include an in camera submission.

    2.    *Exemption 6*

    Having concluded that the agency has failed to justify its withholdings under Exemption

7, the Court next considers the OIG's decision to withhold, under Exemption 6, the "[n]ames of

and identifying information for" (1) the "OIG complainant" ("including information in the

complaint that would identify the complainant"); (2) "third-party individuals referenced as part

of the complaint;" and (3) "OIG law enforcement personnel," including those who "received the

complaint and took initial administrative action."  Dkt. 28-13 at 1 (Vaughn Index).  "Exemption

6 protects information about individuals in 'personnel and medical files and similar files' when

its disclosure 'would constitute a clearly unwarranted invasion of personal privacy.'"  *Shapiro v.*

*U.S. Dep't of Just.*, 153 F. Supp. 3d 253, 257 (D.D.C. 2016) (quoting 5 U.S.C. § 552(b)(6)).  The

D.C. Circuit has explained that the exemption can sweep in "bits of personal information, such as

names."  *Jud. Watch, Inc. v. Food & Drug Admin.*, 449 F.3d 141, 152 (D.C. Cir. 2006).  But the

mere fact that an agency file or record contains personal, identifying information is not enough to

invoke Exemption 6—the information must also be "of such a nature that its disclosure would

constitute a clearly unwarranted privacy invasion."  *Nat'l Ass'n of Home Builders v. Norton*, 309

F.3d 26, 32 (D.C. Cir. 2002).  To make that determination, "the Court [must] employ[] a

balancing test, weighing 'the private interest involved (namely the individual's right of privacy)

against the public interest (namely, the basic purpose of [FOIA], which is to open agency action

to the light of public scrutiny).'"  *People for the Am. Way Found.*, 503 F. Supp. 2d at 304

(quoting *Jud. Watch*, 449 F.3d at 153).  "In undertaking this analysis, the [C]ourt is guided by the

instruction that, under Exemption 6, the presumption in favor of disclosure is as strong as can be

found anywhere in [FOIA]." *Nat'l Ass'n of Home Builders*, 309 F.3d at 32 (internal quotation marks omitted).

Plaintiff insists, at the threshold, that the withheld records are not "personnel, medical, or similar file[s]" under Exemption 6:  "The content of [the] three page complaint," she contends, "would not include documents such as tax or medical records beyond what the Plaintiff provided," and "FOIA [Exemption] 6" therefore "cannot apply."  Dkt. 35-1 at 13.  But, in considering the scope of the "similar files" language in Exemption 6, the Supreme Court has made clear that Congress did not mean "to limit Exemption 6 to a narrow class of files containing only a discrete kind of personal information" (such as tax or medical records), but, rather, "to cover detailed Government records on an individual which can be identified as applying to that individual."  *U.S. Dep't of State v. Wash. Post Co.*, 456 U.S. 595, 602 (1982) (internal quotation marks omitted); *see also Nat'l Ass'n of Home Builders*, 309 F.3d at 32.  The information at issue need only be "similar" to "personnel" or "medical" files to meet this threshold burden.  Exemption 6 therefore covers "not just files, but also bits of personal information, such as names and addresses, the releases of which would create[] a palpable threat to privacy."  *Jud. Watch, Inc.*, 449 F.3d at 152 (internal quotation marks omitted); *see also Telematch, Inc. v. U.S. Dep't of Agric.*, 45 F.4th 343, 351 (D.C. Cir. 2022).  Because the information at issue "applies to a particular individual," *Niskanen Ctr. v. Fed. Energy Reg. Comm'n*, 20 F.4th 787, 791 (D.C. Cir. 2021) (quoting *Wash. Post Co.*, 456 U.S. at 602), this threshold burden is satisfied.

The Court, accordingly, turns to the question of whether disclosure of the "identifying information" at issue "would compromise a substantial, as opposed to a *de minimis*, privacy interest."  *Id.* (quoting *Prison Legal News v. Samuels*, 787 F.3d 1142, 1147 (D.C. Cir. 2015)).

As noted above, Plaintiff no longer challenges the OIG's decision to withhold "the *names* of specific individuals involved in the investigation:" she clarified, in her opposition to the OIG's motion for summary judgment, that she now "request[s] only information in the *body* of the complaint." Dkt. 35-1 at 10 (emphases added); *see also* Dkt. 44 at 8–9. The Court understands this concession to include any names, email addresses, signatures, and the like.

But that leaves "the content of the complaint," Dkt. 44 at 8–9, and, at least on the present record, the Court cannot assess how Exemption 6 applies to any "identifying information" that the OIG redacted pursuant to Exemption 6 from that portion of the records at issue. Dkt. 28-13 at 1; *see also* Dkt. 28-1 at 9 (explaining that the NSF OIG redacted "e-mail content" pursuant to Exemption 6 without expounding on what that content was); Dkt. 28-11 at 4 (Evans Decl. ¶ 16) (same). To be sure, if the body of the complaint includes information that might identify the complainant, third-party witnesses, or OIG employees, that information would likely fall within the scope of Exemption 6. Just as disclosure of a name or email address can constitute an unwarranted invasion of personal privacy, the disclosure of "information about facts and events that would identify the speaker" can cause precisely the same harm. *Horvath v. U.S. Secret Serv.*, 419 F. Supp. 3d 40, 47, 48 (D.D.C. 2019) (internal quotation marks omitted); *see also, e.g., Dep't of Air Force v. Rose*, 425 U.S. 352, 380 (1976) (noting, in an Exemption 6 case, that "what constitutes identifying information . . . must be weighed not only from the viewpoint of the public, but also from the vantage of those who would have been familiar . . . with other aspects of [the relevant individual's] career"); *Nat'l Whistleblower Ctr. v. Dep't of Health & Human Servs.*, 849 F. Supp. 2d 13, 30 (D.D.C. 2012) ("[W]hile the redaction of an individual's

name may be sufficient to protect his identity and privacy from the public, it may not be sufficient to protect him in the smaller community of his school or work.").

The problem is that, at this stage, nothing in the OIG's evidentiary showing allows the Court to assess what portion of the records were withheld pursuant to Exemption 6 and to determine whether the OIG had a sufficient basis to withhold those portions. The Kendrick declaration notes that the OIG withheld "the names and identifying information of the OIG Special Agents and investigative support employees"—as well as "of the OIG complainant . . . [and] of other third parties referenced in the law enforcement record"—but does not provide any insight into the nature of the "identifying information" withheld, Dkt. 28-3 at 9 (Kendrick Decl. ¶¶ 33–34), or elucidate how much "e-mail content" had been redacted, Dkt. 28-11 at 4 (Evans Decl. ¶ 16). Nor does the OIG's second declaration add the required specificity. That declaration, submitted by the FOIA officer from the NSF, Sandra Evans, Dkt. 28-11 at 1 (Evans Decl. ¶ 1), merely attests in conclusory terms that release of the redacted portions of the records, "would directly or indirectly disclose the identities of the OIG complainant and the identities of other third-party individuals who might have personal knowledge of, or other connection to or involvement in, the subject matter of the complaint." *Id.* at 4 (Evans Decl. ¶ 17).

Unlike the agency in *Horvath*, where the Court concluded based on agency declarations that "the substance of any statements provided to investigators" could be redacted under Exemption 6 because those would "reveal the identity of the Secret Service agents who provided sworn statements or were interviewed as part of the investigation," here, the OIG did not provide a sufficiently detailed explanation in its declarations of why the redacted "e-mail content" constitutes "identifying information." *Compare* Dkt. 28-11 at 4 (Evans Decl. ¶ 17) (noting only

that the "redacted portions . . . would directly or indirectly disclose the identities of the OIG complainant"), *with Horvath*, 419 F. Supp. 3d at 48 (referencing an agency declaration that explains that redacted information "concerns a small group of individuals who are known to each other and to the Plaintiff and who are easily identifiable from the details contained in the withheld information"). The Court therefore cannot grant summary judgment in favor of the OIG with respect to those records without further information. *See, e.g.*, *Pejouhesh v. U.S. Postal Serv.*, No. 17-cv-1684, 2019 WL 1359292, at *7–8 (D.D.C. Mar. 26, 2019) (declining to grant summary judgment on similar grounds).[3]

The Court will, accordingly, grant the OIG's motion for summary judgment only insofar as it concerns the redaction of individual names in the complaint, email addresses, and signatures, given Plaintiff's non-objection to those redactions. *See* Dkt. 44 at 8–9. The Court will, however, deny both parties' motions for summary judgment as to any other "identifying information" that may have been redacted from the body of the complaint, given the unresolved factual disputes about what portion of the records were withheld pursuant to Exemption 6 and whether the OIG had a sufficient basis to do so.

## C.    Privacy Act

Plaintiff further argues that "the withheld information cannot be exempt" from disclosure under the Privacy Act. Dkt. 44 at 15. As explained above, the Court must separately consider Plaintiff's right to access to records covered by the Privacy Act. *See Martin*, 819 F.2d at 1184.

The Privacy Act provides that "each agency that maintains a system of records" must, "upon request by any individual to gain access to his record or to any information pertaining to

---

[3] Because the Court cannot, on the present record, ascertain the scope of the Exemption 6 redactions or the privacy interests at stake, the Court does not reach the "Public Trust" interests that, according to Plaintiff, "outweigh the FOIA exemptions." Dkt. 32 at 12.

him which is contained in the system, permit him . . . to review the record and have a copy made of all or any portion thereof in a form comprehensible to him." 5 U.S.C. § 552a(d)(1). But the Act "authorizes agencies to exempt from its access and amendment provisions all systems of records consisting of 'investigatory material compiled for law enforcement purposes.'" *Doe v. FBI*, 936 F.2d 1346, 1352 (D.C. Cir. 1991) (quoting 5 U.S.C. § 552a(k)(2)). Subsection (j)(2) allows agencies that "perform as [their] principal function any activity pertaining to the enforcement of criminal laws" to exempt from subsection (d) certain types of criminal records systems, including those "which consist of . . . information compiled for the purpose of a criminal investigation, including reports of informants and investigators, and associated with an identifiable individual." 5 U.S.C. § 552a(j)(2). Similarly, subsection (k)(2) "permits any agency to exempt from subsection (d) any other records containing 'investigatory material compiled for law enforcement purposes.'" *Doe*, 936 F.3d at 1352 (quoting 5 U.S.C. § 552a(k)(2)).

The OIG invokes subsections (j)(2) and (k)(2) to withhold the "[t]otal email correspondence" at issue here under the Privacy Act. Dkt. 28-13 at 2 (*Vaughn* Index). The agency contends that the NSF's "OIG Investigative Files" are a "Privacy Act system of records that NSF has legally exempted by regulation from the disclosure requirements of that Act." *Id.* The OIG further maintains that the e-mail record at issue here is an investigative record exempt from disclosure under 5 U.S.C. § 552a(j)(2) and (k)(2), because "the entire responsive e-mail record was compiled for law enforcement purposes, [it] is maintained in and retrieved from the OIG Investigative Files system (NSF-52), and [it] pertains to the OIG's enforcement o[f] criminal laws and other law enforcement purposes." *Id.*

Although the Privacy Act's exemption provisions address the process for exempting an entire "system of records," the NSF regulations provide, specifically, that the "Office of

Inspector General Investigative Files" are exempted under (j)(2) and (k)(2) only insofar as the system "consists of information compiled" either (1) "for the purpose of a criminal investigation or for other purposes within the scope of 5 U.S.C. 552a(j)(2)" or (2) "for law enforcement purposes other than material within the scope of 5 U.S.C. 552a(j)(2)."  45 C.F.R. § 613.5(b), (c). Much like the Privacy Act regulations that apply to the FBI's Central Records System—which provide that that system of records is exempt "only to the extent that information in th[e] system is subject to exemption pursuant to 5 U.S.C. [§] 552a(j) and (k)," 28 C.F.R. § 16.96(a)(1)—the NSF regulations make clear that documents in the OIG's Investigative Files system or records qualify for exemption "only if they constitute law enforcement records within the meaning of the statue."  *Doe*, 936 F.2d at 1353; *see also Vymetalik v. FBI*, 785 F.2d 1090, 1095 (D.C. Cir. 1986) (reaching the same conclusion as to the FBI's Central Records System).  "Accordingly, the [OIG] bears the burden of demonstrating a law enforcement purpose for *each record* as to which it has claimed exemption in this case," *Doe*, 936 F.2d at 1353 (emphasis added)—a burden that, as discussed above, the OIG has yet to satisfy at this juncture.  Because the D.C. Circuit "borrow[s] the test for 'law enforcement purpose' that [it] devised . . . to evaluate the applicability of Exemption 7" when considering the applicability of the Privacy Act, *id.*, the Court will take the same approach to the Privacy Act inquiry that it adopted in the context of Exemption 7.

Accordingly, as above, the Court will deny summary judgment to both parties pending further factual development regarding the "law enforcement purpose" of the OIG's investigation at issue here.  *See supra* at 18–19.

D.      **Motion for Leave to Add Details**

Finally, Plaintiff recently filed a motion for leave to "add details" to her case, Dkt. 50,

which this Court will construe as a motion for leave to supplement her previously filed motions

for summary judgment.  In her motion to add detail, Plaintiff asserts that, in responding to a June

2018 complaint she filed with the NSF's Office of Diversity and Inclusion, that office "lied about

their investigative authority" by falsely communicating that they "could not accept the complaint

due to both authority and jurisdiction issues."  Dkt. 50 at 1–2.  Because, in Plaintiff's view, "the

defendants have previous[ly] lied about findings following an investigation," the Court "should

[in this case] not take for granted any statements made by the defendants about any type of

investigation."  *Id.* at 2.

It is settled law that "a mere assertion of bad faith is not sufficient to overcome a motion

for summary judgment."  *Baker & Hostetler LLP v. U.S. Dep't of Commerce*, 473 F.3d 312, 318

(D.C. Cir. 2006).  But, in any event, the Court need not—and should not—reach the merits of

Plaintiff's argument at this point.  For the reasons explained above, the Court will deny the

OIG's motion for summary judgment on other grounds, and the position that the Office of

Diversity and Inclusion took in a different matter could not, by any stretch, support the entry of

summary judgment in Plaintiff's favor in this matter.  If and when the parties file renewed cross-

motions for summary judgment, Plaintiff may present evidence, if any, relating to the OIG's

"bad faith" in responding to the FOIA request at issue in this case.  For now, however, the Court

will simply deny without prejudice Plaintiff's motion to add details, Dkt. 50, and will, accordingly, deny Defendant's motion to strike that motion, Dkt. 51, as moot.

## CONCLUSION

For the foregoing reasons, it is hereby **ORDERED** that Defendant's motion for summary judgment, Dkt. 28, is **GRANTED** in part as to the redaction of individual names in the requested record and the redaction of material that is not in the body of the "complaint" (such as email addresses and signatures) and otherwise **DENIED** without prejudice.  It is further **ORDERED** that Plaintiff's motion for summary judgment, Dkt. 35, and Plaintiff's amended motion for summary judgment, Dkt. 43, are **DENIED** without prejudice.  It is further **ORDERED** that Plaintiff's motion for leave to "add details," Dkt. 50, is **DENIED** without prejudice and that Defendant's motion to strike that motion, Dkt. 51, is **DENIED** as moot.

It is further **ORDERED** that the parties shall submit a joint status report on or before April 14, 2023, proposing next steps and a further briefing schedule in this matter.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  March 29, 2023