UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAROL SCARLETT, *Plaintiff*, v. OFFICE OF INSPECTOR GENERAL, *Defendant.* | Civil Action No. 21-819 (RDM) |

### MEMORANDUM OPINION AND ORDER

Now before the Court is the renewed motion for summary judgment of Defendant the Office of Inspector General of the National Science Foundation (the "OIG"), Dkt. 63, as well as *pro se* Plaintiff Carol Scarlett's motion for sanctions, Dkt. 59, and her motion for an order resolving her pending motion, Dkt. 59, for sanctions, Dkt. 70. For the reasons that follow, the Court will **GRANT** the OIG's renewed motion for summary judgment, Dkt. 63, will **DENY** Scarlett's motion for sanctions, Dkt. 59, and will **DENY** as moot her motion for an order on her motion for sanctions, Dkt. 70.

### I. BACKGROUND

Plaintiff brought this action against the OIG, alleging that it failed to comply with its obligations under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, to disclose a "complaint" filed around April 2018 against her and/or her company, Axion Technologies. Dkt. 1 (Compl.). The Court described the relevant factual and administrative background in resolving the parties' cross-motions for summary judgment and does not repeat itself at length here. Dkt. 53 at 1. In broad strokes, Scarlett sought "copies of records filed with the OIG during the period from April 1 to April 31st of 2018 against either Axion Technologies LLC or PI [Principal

Investigator] Dr. Carol Scarlett." Dkt. 28-4 at 2 (Def.'s Ex. 1).[1]  The OIG identified one responsive record, totaling four pages in length, and disclosed one page of the document in part, while withholding the other three pages in full pursuant to FOIA Exemptions 6, 7(A), and 7(C). Dkt. 53 at 3–4.

In resolving the parties' cross-motions for summary judgment, the Court concluded that the OIG had failed to provide the type of detailed, nonconclusory evidence necessary to establish the adequacy of its search. *Id.* at 9. At that time, the OIG described its search for responsive records in a single paragraph of the declaration of Jennifer Kendrick, an OIG "Assistant Counsel." *Id.* That paragraph read in full:

> In response to Plaintiff's FOIA/Privacy Act request, the OIG searched its investigative files for any complaints or allegations filed against Plaintiff or Axion Technologies from April 1 to August 31, 2018. The OIG's investigative files are maintained in the Privacy Act system of records entitled, NSF-52, "Office of Inspector General—Investigative Files."  Records in this system that pertain to the OIG's enforcement of criminal laws or that are compiled for other law enforcement purposes are exempt from the access provisions of the Privacy Act pursuant to 5 U.S.C. § 552a(j)(2), (k)(2) in conjunction with 45 C.F.R. § 613.5.

Dkt. 28-3 at 4 (Kendrick Decl. ¶ 16).

The Court held that the Kendrick declaration failed to explain in reasonable detail the scope and method of the search and ran afoul of the principle that "[s]imply naming databases and stating that they were 'searched'" does not suffice.  Dkt. 53 at 9 (quoting *Flete-Garcia v. U.S. Marshals Serv.*, 2020 WL 1695127, at *4 (D.D.C. Apr. 7, 2020)).  As the Court explained, the Kendrick declaration did not identify the terms searched, did not explain how the search was conducted, and, critically, did not establish that searching the NSF-52 database alone was

---

[1] Scarlett asserts that she was seeking information about why she and her small business, Axion, "were denied a SBIR Phase II grant" from the NSF in April 2018. Dkt. 1 at 2–3 (Compl. ¶¶ 9–10, 12).

"reasonably calculated to uncover all relevant documents, or, conversely, that no other record system was likely to produce responsive documents." *Id.* at 10 (internal quotation marks and citations omitted).  In short, the Court was left with "substantial doubt" as to the sufficiency of the OIG's search.  *Id.*

Rather than granting Scarlett's motion for summary judgment regarding the adequacy of the search, however, the Court denied both sides' motions.  *Id.* at 12.  The Court concluded that the OIG could "either renew its motion for summary judgment, supplementing [the record] with additional information to better explain the search already performed, or it [could] conduct additional searches in response to Plaintiff's FOIA request."  *Id.*  In response, the OIG chose the former course, and that renewed motion, Dkt. 63, is now pending before the Court.

As for the merits of the agency's withholdings from the one document it located, the Court granted the OIG's motion for summary judgment with respect to a handful of redactions made pursuant to FOIA Exemption 6 but otherwise denied the motion without prejudice.  Dkt. 53 at 23, 27.  The Court, likewise, denied Scarlett's cross-motion for summary judgment (and her amended cross-motion for summary judgment) without prejudice pending further factual development regarding the law enforcement purpose of the OIG investigation at issue.  *Id.* at 25, 27.

After the Court issued its decision, the OIG filed a status report indicating that it had "determined that its investigation ha[d] reached a point [such] that disclosing certain information from the initial OIG complaint no longer pose[d] a potential harm to OIG's investigative efforts."  Dkt. 55 at 1.  The OIG thus withdrew its reliance on FOIA Exemption 7(A) and "released the document to Plaintiff," *id.* at 1–2, with individual names (including one gendered pronoun), email addresses, and certain signature block information redacted pursuant to FOIA

3

Exemption 6. Dkt. 63-3 at 7 (Second Kendrick Decl. ¶¶ 28–30). The OIG did, however, release the name of the OIG Assistant Inspector General for Investigation because it determined that there was "no longer the risk that public disclosure would signal that the source of the OIG complaint was an NSF employee who had emailed the complaint directly to the head of the OIG Office of Investigations" and because, as a general practice, the "OIG FOIA Office endeavors to disclose the names of Senior Executives referenced in records."[2] *Id.* at 7–8 (Second Kendrick Decl. ¶ 29).

Scarlett, for her part, informed the Court that she "believe[d] that the document released may not be the actual complaint or may not be the complaint in its entirety with only PII redacted." Dkt. 58 at 2. Her status report and subsequent filings, however, make clear that the substance of her argument is not that the released complaint is inauthentic, doctored, or otherwise fraudulent. Instead, she argues that the released document is inconsistent with various representations that the OIG made over the course of this litigation, namely representations that there was a pending investigation against Scarlett and/or her company that might have been jeopardized or affected by the release of the complaint. *See* Dkt. 56 at 2–4. Scarlett's pending motion for sanctions is based on the same purported misrepresentations. Dkt. 59 at 1.

As the case now stands, the sole record at issue in this litigation has been released to Scarlett with limited redactions, which she does not challenge. The only remaining FOIA issue, accordingly, is the adequacy of the search that the OIG conducted. *See Crooker v. U.S. State*

---

[2] The OIG states that the redactions described above were properly made pursuant to FOIA Exemptions 6 and 7(C). Dkt. 63-3 at 7 (Second Kendrick Decl. ¶ 28). The Court previously granted the OIG summary judgment with respect to these redactions under Exemption 6, Dkt. 53 at 23, but not Exemption 7(C), Dkt. 53 at 18–19. The Court need not address the applicability of Exemption 7(C), given that it previously granted the OIG's motion for summary judgment as to those redactions pursuant to Exemption 6. *See id.* at 23.

4

*Dep't*, 628 F.2d 9, 10 (D.C. Cir. 1980) ("Once the records are produced the substance of the controversy disappears and becomes moot since the disclosure which the suit seeks has already been made."); *Heily v. U.S. Dep't of Defense*, 896 F. Supp. 2d 25, 37 (D.D.C. 2012) (dismissing FOIA claims as moot where the plaintiff received the requested materials while litigation was pending), *aff'd*, 2013 WL 5975876, (D.C. Cir. Oct. 16, 2013) (per curiam). On that issue, the OIG has submitted a renewed motion for summary judgment, Dkt. 63, which is now fully briefed, Dkt. 68; Dkt. 69, and therefore ripe for the Court's consideration. Scarlett's motion for sanctions, Dkt. 59, is also fully briefed, Dkt. 65; Dkt. 67, and ripe for consideration.

## II.  LEGAL STANDARD

FOIA cases are typically resolved on motions for summary judgment under Federal Rule of Civil Procedure 56. *Beltranena v. U.S. Dep't of State*, 821 F. Supp. 2d 167, 175 (D.D.C. 2011). To prevail on a summary judgment motion, the moving party must demonstrate that there are no genuine issues of material fact and that she is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A fact is "material" if it is capable of affecting the outcome of a dispute, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986), and a dispute is "genuine" if the evidence is such that a reasonable factfinder could find in favor of the nonmoving party, *Scott v. Harris*, 550 U.S. 372, 380 (2007). In a FOIA case, a court may grant summary judgment on the basis of agency declarations if they "describe the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." *Elec. Frontier Found. v. U.S. Dep't of Just.*, 739 F.3d 1, 7 (D.C. Cir. 2014) (quoting *Miller v. Casey*, 730 F.2d 773, 776 (D.C. Cir. 1984)).

5

## III.  ANALYSIS

### A.  Adequacy of the Search

"An agency has an obligation under FOIA to conduct an adequate search for responsive records." *Ewell v. U.S. Dep't of Just.*, 153 F. Supp. 3d 294, 301 (D.D.C. 2016).  The adequacy of an agency's search "is judged by a standard of reasonableness," *Weisberg v. U.S. Dep't of Just.*, 745 F.2d 1476, 1485 (D.C. Cir. 1984), and "[a]n agency fulfills its obligations . . . if it can demonstrate beyond material doubt that its search was 'reasonably calculated to uncover all relevant documents,'" *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 325 (D.C. Cir. 1999) (quoting *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990)).  "In order to obtain summary judgment[,] the agency must show that it made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested."  *Oglesby v. U.S. Dep't of Army*, 920 F.2d 57, 68 (D.C. Cir. 1990).

The agency can show that it conducted an adequate search by relying on "[a] reasonably detailed affidavit [or declaration], setting forth the search terms and the type of search performed, and averring that all files likely to contain responsive materials (if such records exist) were searched."  *Id.*  Once the agency has proffered "relatively detailed and nonconclusory" declarations describing its search, the burden shifts to the FOIA requester to "produce countervailing evidence" sufficient to establish a genuine dispute of material fact as to the adequacy of the search.  *Morley v. CIA*, 508 F.3d 1108, 1116 (D.C. Cir. 2007) (internal quotation marks and citation omitted).  Such evidence might include, for example, "problems with . . . the specific search terms used or the inadequacy of the particular locations searched."  *Heartland All. for Hum. Needs & Hum. Rts. v. U.S. Immigr. & Customs Enf't*, 406 F. Supp. 3d 90, 117 (D.D.C. 2019).

The Court is now persuaded that the OIG's search for responsive records in this case was adequate. Assistant Counsel Jennifer Kendrick's second declaration, Dkt. 63-3, resolves the doubts that the Court expressed in its March 2023 opinion. In contrast to her first declaration, Kendrick now "explain[s] in reasonable detail the scope and method of the search." Dkt. 53 at 9 (internal quotation marks and citation omitted).[3] She clarifies, for example, that "any complaints or allegations submitted via the OIG Hotline or [to] a specific investigator would be maintained by the Office of Investigations," so she began her search by submitting a search request to the custodian for the Office of Investigations. Dkt. 63-3 at 5 (Second Kendrick Decl. ¶¶ 18–19). Four days later, that custodian informed Kendrick that the records search was complete and that one responsive record was located in the "Office of Investigations' electronic Library of OIG Cases," or the "eLOC" system. *Id.* (Second Kendrick Decl. ¶ 21). And, most significantly, Kendrick explains that "[t]he eLOC system is the OIG's central repository and electronic case management system for OIG investigative records created on or after October 1, 2015, including *any and all* complaints received by the OIG, whether submitted to the OIG via the OIG Hotline, email, mail, phone call, or by in-person 'walk-in.'" *Id.* at 6 (Second Kendrick Decl. ¶ 23) (emphasis added).

In contrast to the OIG's first submission, the second Kendrick declaration does not simply "nam[e] databases and stat[e] that they were 'searched.'" Dkt. 53 at 9 (quoting *Flete-*

---

[3] Kendrick is the "Assistant Counsel to the Inspector General" in the OIG. In that capacity, she serves as the OIG's FOIA "Public Liaison" and is "responsible for handling FOIA and Privacy Act requests submitted to the OIG FOIA Office." Dkt. 63-3 at 1 (Second Kendrick Decl. ¶ 1). Although the "OIG FOIA Office coordinates, rather than conducts, record searches" in response to FOIA requests, *id.* at 4 (Second Kendrick Decl. ¶ 17), the declaration of an official responsible for supervising or coordinating the search efforts can satisfy the "personal knowledge" requirement of Rule 56(c) of the Federal Rules of Civil Procedure. *See, e.g.*, *DiBacco v. Dep't of Army*, 926 F.3d 827, 833 (D.C. Cir. 2019).

7

*Garcia*, 2020 WL 1695127, at *4). Instead, Kendrick names specific search terms used and places searched, explaining that the "Office of Investigations records custodian searched the eLOC system, using the terms 'Scarlett' and 'Axion'" without date restriction. Dkt. 63-3 at 6 (Second Kendrick Decl. ¶ 22). Notably, the search that Kendrick describes is even broader than the one that Scarlett had requested, which was limited to April 1 through August 31, 2018. *Id.* at 5 (Second Kendrick Decl. ¶¶ 18–20). In her previous declaration, Kendrick stated only that the "OIG [had] searched its investigative files for any complaints or allegations filed against Plaintiff or Axion Technologies from April 1 to August 31, 2018" and that the OIG's investigative files are "maintained in the Privacy Act system of records entitled, NSF-52." Dkt. 28-3 at 4 (Kendrick Decl. ¶ 16). This time, however, Kendrick has clarified where and how the OIG searched its investigative files; she has explained that the "investigative records maintained in the eLOC system are covered by the NSF Privacy Act System of Records Notice (SORN) NSF-52—OIG's Investigative Files;" and she has attested that "*any and all* complaints received by the OIG" are maintained in the eLOC system. Dkt. 63-3 at 6 (Second Kendrick Decl. ¶¶ 22–24) (emphasis added). Finally, Kendrick has described how, as the final step in the OIG's search process, she reviewed the sole record retrieved and determined that it was indeed responsive to Scarlett's request. *Id.* at 6 (Second Kendrick Decl. ¶ 25).

The Court concludes that the OIG has carried its burden of showing that it conducted the search in this case using "methods which can be reasonably expected to produce the information requested," *Oglesby*, 920 F.2d at 68, and, as such, that the OIG conducted an adequate search for responsive records.

In response, Scarlett argues that the Court should deny the OIG's motion "based on the facts of the case including that Defendant has made multiple representations contradicted by

8

documentation and evidence." Dkt. 68 at 1. She asks the Court to order the OIG to confirm that there is "no additional document" responsive to her request. *Id.* The thrust of her argument is that, during the course of this litigation, the OIG defended its withholdings on the theory that "NSF OIG had an ongoing investigation based on information in the complaint requested by the Plaintiff and that release of that complaint could damage the [investigatory] process." *Id.* at 2 (internal citation omitted). But, Scarlett argues, following the release of the "complaint" and her review of it, "it is evident that there would not have been a pending law enforcement proceeding nor investigation that release of the document could have interfered with during the time that [the OIG] made these statements." *Id.* at 3. Scarlett "ask[s] that the court weigh in these conflicts of material facts in considering if the Defense has conducted an adequate search." *Id.* at 4. Scarlett's contention appears to be that, because the released document (at least on her telling) cannot support the law enforcement related representations that the OIG made to this Court, there must have been some other record, a second complaint, responsive to her request that the OIG's search failed to locate.

The burden rests with an agency to demonstrate the adequacy of its search. But once the agency has done so, the burden shifts to the plaintiff "to present evidence rebutting the agency's . . . showing of a good faith search." *Ford v. U.S. Dep't of Just.*, 2008 WL 2248267, at *4 (D.D.C. May 29, 2008). Although this approach parallels the shifting burdens that apply in other cases at the summary judgment stage, in FOIA cases "[a]gency affidavits are accorded a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting *Ground Saucer Watch, Inc. v. CIA*, 692 F.2d 770, 771 (D.C. Cir. 1981)).

9

Scarlett's arguments are (at best) "purely speculative" and fail to overcome the presumption of good faith to which the OIG is entitled. *Id.* The Court has reviewed the "complaint" that was released to Scarlett, which she attached to her opposition, *see* Dkt. 68-1, and cannot agree that "it is evident" from that document that there was no pending law enforcement proceeding or investigation with which the "release of the document could have interfered" at "the time that [the OIG] made these statements." Dkt. 68 at 3. Although it is difficult to draw any firm conclusions from the document itself, it certainly does not support Scarlett's contention that the OIG has falsely stated that the investigation was ongoing. To the contrary, throughout the four pages of the document, OIG employees discuss statements that Scarlett made that raised internal warning flags, Dkt. 68-1 at 1, as well as related concerns about her application, *id.*, observing that "[t]his could be an issue . . . and worth looking into" and that "this might be a candidate for further inquiry," *id.* at 1, 2. Even more significantly, the OIG informed the Court that the resulting investigation by the Inspector General was still ongoing as of August 2023, Dkt. 69 at 3, and, according to a more recent filing from Scarlett, the investigation was not closed until December 2023, *see* Dkt. 71-1. The Court has no reason to doubt these representations.

Moreover, even if the Court were convinced that some tension existed between the OIG's assertion that the investigation was ongoing and the "complaint," which on Scarlett's telling refutes that contention, it is far from clear how that tension would support Scarlett's further claim that a second, undisclosed "complaint" must exist. For present purposes, the question is solely whether the search was adequate, which turns on whether the agency looked in the right places using the right search terms. *See Steinberg v. U.S. Dep't of Just.*, 23 F.3d 548, 551 (D.C. Cir. 1994). FOIA "does not mandate a 'perfect' search, only an 'adequate' one," *Vest v. Dep't of Air*

10

*Force*, 793 F. Supp. 2d 103, 120 (D.D.C. 2011), and, here, the OIG has provided ample evidence that it performed just that. The Court has no reason to believe that a second "complaint" exists or that a more extensive search might have found it.

The Court, accordingly, concludes that the agency has demonstrated that it made a "good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Oglesby*, 920 F.2d at 68. Scarlett's argument to the contrary is based on unsupported speculation and does not controvert the agency's good faith representations. Given this conclusion and the Court's prior conclusion that the agency permissibly redacted personal information pursuant to FOIA Exemption 6, the OIG is entitled to summary judgment.

**B.    Sanctions**

That leaves only Scarlett's motion for sanctions under Federal Rule of Civil Procedure 11(b), Dkt. 59.[4] In that motion, Scarlett maintains that "the Defendant repeatedly, falsely claimed exemptions due to ongoing investigations based on statements within the withheld document." Dkt. 59 at 1. And she requests that the Court "impose sanctions in an amount not less than $150,000 against the Defendant" to compensate her for her "time spent" on the case, "using typical legal fees of $300/hr (Clio 2022 Legal Trends report) for an average attorney," even though she is not, in fact, an attorney. *Id.* The OIG argues that the Court should deny Scarlett's motion as procedurally improper, or, in the alternative, on the merits. Dkt. 65 at 2.

At the threshold, Scarlett has ignored the requirements of Federal Rule of Civil Procedure 11; she did not serve her sanctions motion on the non-movant prior to filing to provide an

---

[4] The substance of this motion overlaps in large degree with the status report that Scarlett filed following this Court's summary judgment opinion. *See* Dkt. 56.

11

opportunity to withdraw the challenged filing or assertion.  *See* Fed. R. Civ. P. 11(c)(2).  Consistent with that rule, motions for sanctions should not be made without substantial basis and without first engaging in good faith efforts to resolve the issue in the manner proscribed by Rule 11(c)(2).  *See Kennedy-Jarvis v. Wells*, 113 F. Supp. 3d 144, 155 (D.D.C. 2015).  The Court, accordingly, agrees with the OIG that the motion is procedurally improper and that, on that basis alone, the motion should be denied.

But even if the Court were to disregard that defect, the Court would still conclude that sanctions are unwarranted.  The test for imposing sanctions under Rule 11 is an objective one, which requires the Court to ask whether a reasonable inquiry would have revealed that a pleading lacked sound basis in law or fact.  *See Sharp v. Rosa Mexicano, D.C., LLC*, 496 F. Supp. 2d 93, 100 (D.D.C. 2007).  The Court must also "take into consideration that Rule 11 sanctions are a harsh punishment, and what effect, if any, the alleged violations may have had on judicial proceedings."  *Robinson-Reeder v. Am. Council on Educ.*, 626 F. Supp. 2d 11, 18 (D.D.C. 2009).  None of the OIG's pleadings come close to crossing that line.

As explained above, the Court has reviewed the document in question and finds no support in it—or elsewhere in the record—for Scarlett's contention that the OIG made misrepresentations to the Court "regarding [its] withholding[s] . . . that are in direct conflict with the content of the now released document."  Dkt. 59 at 2.  Although Scarlett does not specify what those direct conflicts are, the document at issue is consistent with the OIG's position that the investigation was ongoing until recently—it details the basis for "further inquiry" into Scarlett and her company and the ensuing investigation was still ongoing as of August 2023.

Dkt. 59-1 at 2. Indeed, as the letter that Scarlett filed with the Court in December 2023 indicates, the investigation was only recently closed. *See* Dkt. 71-1.[5]

The Court, therefore, concludes that Scarlett's motion for sanctions is both procedurally defective and substantively meritless.

## CONCLUSION

For the foregoing reasons, Defendant's renewed motion for summary judgment, Dkt. 63, is hereby **GRANTED**; Plaintiff's motion for sanctions, Dkt. 59, is hereby **DENIED**; Plaintiff's motion for an order on her motion for sanctions, Dkt. 70, is hereby **DENIED** as moot; and Plaintiff's "Request for Investigative Records Related to Motion for Sanctions," Dkt. 71, is hereby **DENIED**.

**SO ORDERED**.

/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge

Date:  March 6, 2024

---

[5] In that filing, Scarlett argues that the "this close out letter is simply a ploy by Defendants to counter Plaintiff's motion to the court for sanctions." Dkt. 71 at 1. As with the contention at the heart of Scarlett's motion for sanctions, there is simply no basis for the Court to so conclude. The Court will **DENY** Scarlett's request "that the Court require the Defendants to provide all investigative records starting in January 2021 until December 15th, 2023 on the topic of Plaintiff's primary place of employment." *Id.* at 2. Those records do not fall within the scope of the FOIA request presently at issue, nor does that request have any bearing on the sole issue still pending in this litigation—the adequacy of the OIG's search.